which is 20-2332 Latin American Music Company, Inc. v. Spanish Broadcasting System. Do we have counsel present? Please come up. Good morning, and Mr. Storch? Yes. You may proceed. Thank you. Your Honor, I think the seminal event in the proceeding below that directly led to the trial of the African-Americans. And that is when the plaintiff's attorney had disclosed to the court and the other side that audio tapes that recorded the infurnishing works didn't, in fact, exist, contrary to that attorney's representation a few weeks earlier, that they had been destroyed because of some sort of ransomware attack. Now, I understand Judge Salda was understanding to me how it makes sense. That's not the way it's supposed to work in federal court. Those tapes had been requested some two, three years earlier. But the failure to produce those, and I think the record below is clear, was not due to the plaintiff or to Mr. Bernard. The evidence below showed that on its initial disclosures, which were filed within a few weeks or months when the action was actually started, the initial disclosures indicated that these tapes existed. And they were listed as likely evidence in the case. The attorney for Mr. Bernard at that time, Mr. Storch, testified, and it's not equivocal in his testimony, that Mr. Bernard, the plaintiff, had turned the tapes over to him that he had to fix. And he said that he had gotten ill, he had neglected to turn them over in the initial production, and when his illness progressed, he turned them over to the subsequent counsel, Mr. Talcott. And he said that his attorney's fees, notwithstanding whatever happened with regard to these tapes, they weren't produced, and they, you know, it was just part of a series of, if you want to look at it charitably, mishaps. It sounds to me like there was blame to go around on the part of everybody on the plaintiff's side. And why should this—how should this affect the award of attorney's fees? Well, I think, Your Honor, it should affect it in the sense of how are you going to assess those problems? Who is actually responsible for that? This is a question— Well, ultimately, the attorney works for the party, and the party is responsible, isn't it? Isn't that the case? Well, I think, Your Honor, under—because the award of the fees is discretionary, I think the court has the power to decide whether or not they're going to have to be full burdened of the fees and penalties fall on the plaintiff. You think that in a—that in one of these cases when—because the award of fees is discretionary, if the district court thinks it's the lawyer's fault more than specifically the client's fault, the district court shouldn't award fees? The question, Your Honor, is how do you allocate those fees? Do you have that fall entirely on the head of the client? And I think here— But that's a weird thing to suggest that the district court is supposed to apportion fault between the client and the attorney. I mean, shouldn't that be resolved by some kind of a malpractice action between the client and the attorney? Why should the district court be looking behind the representation of the client to decide whether it was the client's fault or the attorney's fault and in what proportion? I mean, that seems like an extraordinary thing for the district court to do, doesn't it? In other circumstances, yes, but that's what the district court actually did here. The district court actually convened a subsequent hearing and had both the attorneys testify. And the subject of that hearing was to find out what had happened with respect to why were these states not disclosed. And it was during that hearing that the district court conducted that it became very clear that the client had in fact turned these states over and that the client hadn't even realized until some day before the trial that the attorneys had not turned them over to the other states. Can I ask you this? So if, in fact, let's put aside the question of fault on the part of the attorney and on the part of the client. If we just said that your side failed to produce the tapes and also, by the way, even though you have the subpublishing agreement failed to point to paragraph 1 that seems to have the exclusive license, you failed to put forward all of this evidence. Would that justify an award of attorney's fees because you didn't bring to the district court's attention the evidence in support of your claim? Putting aside whether it should be apportioned between the – how it should be apportioned between the client and the attorney, it seems like you're not disputing that that justifies an award of attorney's fees. No, I think what we're arguing here is that the fees in the discretion of the court should be considered whether or not those should be allocated across the responsibility of the parties. But he did consider it. He didn't agree with you, but he considered it. That was the argument that was made before. No, he exercised his discretion, didn't he? Your Honor, I think the record supports that actually the court had determined it was not going to allocate it. In fact, in the record, this is at the end of the trial before there was a hearing even on this issue of fees. But the argument was made to the court, to the district judge, that the attorney's fees should be shared between the lawyer and the client. Right? Correct. So he heard it, and he considered it, and he disagreed. That happens all the time. No question about it. I think in this case, Your Honor, I think it's clear from the statements of the district court. The fact that he ultimately concluded that the lawyers – that he wasn't going to award fees against the lawyers just is a consequence of his consideration and an exercise of his discretion. Right? Your Honor, the witness said that as an abuse of discretion, there was a failure of the district court in evaluating this sentence without apportionment. What about Judge Menasche's point that this can all be sorted out later on between the client and the attorney? If, in fact, the attorney behaved in such a way that was negligence or malpractice, fell below professional standards, does the client have a claim against him? Your Honor, the practical consideration is that the district court is supposed to withdraw. This is what? Practical consideration is the district court is going to have to withdraw because the domicile could leave, although it would have to double-check the statute of limitations would have run on that case's representation. Well, but we're not going to change the way we would evaluate this case based on your failure to act before the expiration of the statute of limitations. I mean, can you just explain to me why, if we think that there is a remedy in the form of a malpractice suit against your attorney, whether you took advantage of it or not, why isn't that the way fees should be apportioned between a client and an attorney? Because there was here what even the defendants in this case called a fraud on the court in which the district court came extremely close to saying this is, in fact, a fraud on the court. And I think the district court has the inherent power when something like that happens to the court to bring before all the responsible parties and to make a determination as to who and in what proportion should be responsible for it. And am I correct, I think you've said it a number of times, but the statute, the standard of review here is abuse of discretion, right? And that's rather deferential, right? It is rather deferential, no question. I think that Well, wait a minute, a minute ago, now you're saying you think that the judge should have had everybody come before him to reach a determination. But a minute ago, I thought you indicated that he did exactly that. He did, but I don't believe that this record supports that the judge was doing that with an idea of allocating amongst the various people who had maybe caused an additional cost to the defendants. I think you come back and I understand your point that you select your attorney and to a great extent you're stuck with that. But here you have a situation in federal court where you have conduct that even the district court was tantamount to fraud by the attorneys. I mean, a client turns over documents to its attorneys. The attorney has nothing in this record to suggest that they were turned over, that the attorney said, hey, you know, we haven't produced this document, you know, better give it to us. There's nothing to suggest that the client had any reason to believe other than that when he turned it over to the attorney, they were doing what they were supposed to. So, Mr. Storch, let me just say, I think you've saved three minutes for rebuttal. Would you like to use any of that time now or would you rather save that for rebuttal? If anyone has questions, I'll answer them now or if I'll save them. Why don't we move along to opposing counsel and then we'll come back to you. Thank you, Mr. Storch. Thank you. Mr. Scimitaro? Yes. Thank you, counsel. May it please the court. James Scimitaro. I'm not a client, actually. In SDS. I think we need to take one step back and just center this issue, which is my observation is that what the seminal issue occurred with the recordings of the 11th hour, that's actually not true at all. The recordings were just one of three pieces of critical evidence that I've produced in this case. It was the recordings, and I'm going to review those in a second. The Excel spreadsheet, which is essentially the annotations of the recordings that allegedly documented who, what, and when. And then the transfer document, which we discovered on the eve of trial by going through a separate document. That transfer document is pivotal because that transfer document revealed that there was serious issues with standing. I'm sorry. I'm having a little trouble hearing you. I'm sorry. I'll speak up. It revealed what? The transfer document revealed that there were considerable issues regarding the appellate's standing to bring the claim. So the judge saw that and granted some re-judgment in this case, finding that seven of the 13 clerks were clearly time-bombed in the fact that Jones were not the owners of those clerks. The other six, we didn't have the opportunity to have discussion on them. Can you help me evaluate this? So it seems that they failed to bring to the district court's attention the evidence showing that they are the owners or would have a claim, a copyright claim. But as they point out, the subpublishing agreement in paragraph one gives them an exclusive license even given the fact that the rights were transferred. There's an exclusive license back. And generally you have a cause of action under the Copyright Act if you're an exclusive licensee. So if the standard here is the objective reasonableness of the claim, let's say, and maybe you'll dispute the facts, but let's say for the purposes of this question, there are facts supporting their claim. Let's say they had an exclusive license. Let's say that the recordings existed and they could show it. Let's say it all happened. But they somehow failed to present it to the district court through what Judge Walker said was a series of mishaps or maybe something more nefarious. I don't know. Should we consider that objectively unreasonable if, in fact, they have a valid claim? They just presented it improperly or inadequately? Well, there are two parts in that response to that. I think the first part, Your Honor, is Judge Sullivan is looking toward rules of condamnation that's put in the front end. And the testimony that was put in the front end, included by a very sophisticated plaintiff who brings multiple copyright infringing options, was it referred to the wrong provision in the paragraph. So the judge is supposed to consider what's in front of him. It's not his obligation to willingly dig through and read other provisions that were either not brought to his attention or which were brought to his attention in a different paragraph. That's the first part. But the second part, which I think is critical, is there's a little bit of faith here that the plaintiffs don't deserve the benefit of, which is that standing document demonstrated that the Ninth Village, the appellate, transferred their entire capital, 40,000 works according to them, to this system of law for zero consideration. And that allegedly got it back. We believe it was referred to a bunch of events to get around creditors and their bankruptcy. But we didn't get any discovery because we found that document prior to it. So it wasn't produced despite being asked for it multiple times in discovery on our own on the verge of trial. So the suggestion that, well, I have this document, and we wouldn't care about this document, gives me standing. When we know it for the first seven songs, they really had somebody's judgment against them. I don't think they're held to that presumption that they actually do have standing. We don't know. Everything's an open question at best. But what we do know is when they filed this action, seven of the 13 songs, they did not have standing for it. And that was rebelled on in summary. So, in fact, if they had pointed to paragraph one and said they were an exclusive licensee rather than claiming they were the owner of the copyright, you would have said that that was invalid because the whole thing was part of a fraudulent conveyance scheme, and then we would have had an argument about that, or the district court would have. To be fair, Your Honor, we would have had multiple arguments that we may have found other than the presumption of discovery. I would say that the circumstances surrounding that $0 transfer to your sister-in-law certainly raise questions. I really don't know what defenses may have arisen because, again, we never got there. But, again, that's just one of two parts. And am I right that there was never really a discussion of paragraph one, that they were all focused on paragraph eight about the non-exclusive right to enforce? I do believe that's correct. I believe the focus was primarily not on paragraph number one. It was not really about the justified exemption. It does show that the lawyer did not seem to be doing an effective job. Well, I'd also say that the CEO and president of the plaintiff, who has brought multiple copyright infringement actions, who was part of the agreement, also did fill the document. And I think that's critical because direct testimony in this case was submitted by affidavit in declaration. So he didn't even mention this kind of document. He was trying to hide it. He was trying to hide it for a variety of reasons, which we don't know exactly why. But I don't think we should give them that up, saying you hid it and it was innocuous. I mean, when it comes out in the testimony, I assume it's in your cross-examination of him, and you say, what about this transfer document? He says, oh, yes, well, you know, his company is the original owner, and then they transferred it to this woman, but then they got a license back. So he didn't say that on cross-examination, right? On cross-examination, when he was finally forced to answer this document, he gave testimony which Judge Sullivan, in a quote, said was incredible, self-contradictory, implausible. And why was it self-contradictory? Because he originally claimed to be the owner of it and then claimed to have a license back, and then they never really pointed to the source of the license. That's correct. And he also couldn't explain the circumstances of why you transferred $40,000 in alleged works for $1. And the timing also didn't make sense because there was an initial bankruptcy, and that transfer document wasn't very clear as to when it came back. There was no clear path as to when the transfer started and when it came back. Hand-by-hand. When I said we shouldn't give them this legal state as to whether they have to pay anything, I also don't think there's the benefit that they should give to them that these recordings, alleged payment, can aid anything. Because it's almost like an apartment property. You don't need a briefcase, and you don't know what's in the briefcase. Because what's important to remember, and you just heard an Irish guy say this, which is from the inception of this case, in our initial disclosures, we identified the recordings. Well, if you look at the history of this case, there's three men that's been complained, and the songs changed over time. Where were the other recordings? How come the initial disclosures were not given? Because there's only six songs at the beginning. There's 13 by the author of the complaint. But does it matter whether the recordings existed or did not exist, or is it enough that they said they had them and they didn't have them and they failed to produce them? I think it's strictly enough that you have a litigation that's coming up here, and that's undeniable. But I also think that what they're trying to say is that it wasn't objectively reasonable because we had this evidence. But to this day, we don't know what that evidence was. All we have is unidentified recordings. Right, so that was my question about if we assume the evidence exists but they failed to put it in front of the district court, does that make a difference? Should we say it's objectionably reasonable on the assumption that it exists? And I think your answer was the district court has to decide based on what's put in front of the district court, and so it doesn't matter. Well, I think there's two parts to that. I hope I answered your question. On the first part, I'd say we have a litigation that's coming up. We didn't produce typical evidence. That alone is in and of itself. But what I'm saying is on top of that, if in fact these are phantom recordings, if in fact these recordings don't have any evidence, it certainly gives the fact that there may have been analog motivation, which is another factor to consider under this highly defenseless standard. And I also think it's important to know that. I have a question about the... I think just after it was revealed that in fact there were the recordings at the very end, on the eve of trial, I guess it was, or maybe it was even during trial, I don't know, but the last iteration of this saga, the plaintiff said, we have the recordings now. We didn't think we had them before. We now have them. But we're not going to rely on them. What was that all about? We had actually filed a motion of lemony, not on the 11th hour, I'd say about two months before the trial date, according to the pre-trial calendar, where we said, here are the four or five things that we felt that we never produced in this case, and one of them were the recordings. So this notion that the Pellman CEO and President were shocked when they found out in the morning of the hearing, is actually not correct. They knew that the recordings were going to be out at the time that he submitted his direct testimony, which he never submitted by declaration. So they were just letting the district court know that they existed, but that in compliance with the order on the motion of lemony, they were not going to introduce them. Okay. Obviously, the entire thing was a head-scratcher, and we have been talking about this now. They didn't specify that that was the reason. They just said, we're not going to rely on them. So they're already out. So even if they wanted to rely on them, they would have had to ask the district court to reconsider its earlier order if they wanted to. That's correct. And what we've heard, at least in the papers, is that Mr. Talcott, and it's easy to point to Jenkins on this topic, because I'm here to defend himself, and they've done a lot of errors on this early on, but that he was so conflicted that he couldn't do his job, he found it disastrous to stay a month before the trial because of their efforts to affirm things. First of all, they could have at least asked for a stay or some other remunerative measure. Instead, what they're asking the district court, and Your Honor, you asked that question, this is kind of a random question. It really is a malpractice thing. What they're asking the district court, the Spanish Broadcasting System, is to be the guarantor of their choice of counsel. They think about Mr. Talcott's asks. They elect him to hire him. Well, I don't know if they're really asking that. I mean, would it really affect you if the fees were split between them and their counsel somehow? But what's the harm to your client? It would just be the delay in having a procedure for apportioning the damages and getting the fees, but it wouldn't actually reduce the fees to which you're entitled. As some of you know, you heard about the Show Cause Briefing. That Show Cause Briefing is separate and apart from the Attorney's Briefing. And that Show Cause Briefing does not, for the purposes of this assessment, just offer whether or not this case should be referred to the Attorney General for perjury. If you read the end of the trial transcript, it is a biting, biting six minutes with Judge Sullivan using words that would surpass the objectively unreasonable standard. When he says, this is not close to a close call, and I am deeply troubled by what happened in this courtroom, he did consider not just the appellants in this conduct, but all the appellants in this conduct, and ultimately decided that the blame lays with the appellants. And he did consider the dual interests of the procurement statute. And one of them is to deter, to deter frivolous lawsuits. And these appellants have filed a frivolous lawsuit, a frivolous lawsuit, and they actually filed a complaint to avoid attorney's fees that were awarded against them for prior frivolous lawsuits. They need to deter. This is a serial litigant who files actions without evidence of infringement, without evidence of standing for ownership. And this is just the latest time. SDS decided upon themselves that they're tired of getting faceless cease and desist letters, so they took them out of the trial and they could bail, and there should be consequences for that. And those consequences are the board of attorneys' fees against the appellants, not the attorneys against the appellants. Thank you, counsel. Thank you. Mr. Storch, you've reserved three minutes. Yes. Again, I go back to, you know, the question of the allocations fault. And as counsel has indicated, there was a separate case. This court declined to listen to the evidence of that hearing, making determinations whether it was fair and equitable to have this fall on the plaintiff's shoulders. You know, one thing here about the case, again, if I could. The testimony from the right side. I'm sorry. You just said he declined to make the ñ I thought it was what we're fighting about here is that he did make the allocation, and he put it all on the plaintiff's shoulders. He put it all on the plaintiff's shoulders. So it's not that he failed to allocate it. He just didn't allocate it the way you think it ought to have been allocated. I think that the judge used the point of any allocation, and I think that's contrary to the record. So you think he was either unaware or unwilling to even consider whether any of the fees should be assessed against the attorneys? I do. And I think if you look at the record, Your Honor, and again, I said it the opposite of this. I understand why Judge Sullivan, in a sense, stuck the way it's supposed to happen, and he doesn't know it or anything. But at the beginning, before Mr. Bernard even took the stand, the judge said Mr. Bernard is walking into a very dangerous, I think, dangerous cross-examination, and there's going to be hell to pay for this. It was clear that the judge had determined that this was Mr. Bernard's fault. Or he could see what was coming. Pardon? Or he could see what was coming because it was entirely apparent and he was giving your client fair warning, right? That's an alternate version of viewing it, right? It is. Which is somehow sometimes could be viewed as a kindness to a client to give them warning of how to avoid engaging in misconduct that's sanctionable. So it could be viewed as a kindness on the part of the district judge that was simply ignored by the client, right? That's another way of viewing it. That's just our position. I don't think the record actually bears that out. Well, wasn't that statement a reference to the fact that all of the evidence of infringement was going to be that one person's testimony because the recordings weren't available and so therefore the district court, I recall, emphasized that he needs to have superhuman powers of recall or something to that effect in order to carry his burden. I mean, that's what he's referring to. I mean, do you dispute that? I mean, if in fact all the evidence of infringement relied on his testimony, he was in fact walking into something that was going to be very crucial. Well, and I do agree, Your Honor, that that's superhuman recall, and the problem was that this was an honor to walk into the trial, in the preface to the trial, with an understanding, and I think it was a perfectly reasonable understanding, to be able to refer to the contemporaneous recordings. Well, wait a minute. I thought we just heard from counsel, and I thought it was undisputed, that the district court months before trial had granted a motion in limine saying if there are any recordings that are later produced, they are excluded. So I guess I'm not sure what you mean by your client walked into trial expecting there to be recordings. In the record, Your Honor, Mr. Giroir testified that within two weeks of the trial, as he was coming up fair to the case, he was told for the first time that the recordings were not going to be produced. Okay, but that's still two weeks before trial. You're saying he learned of the motion of limine well before the trial. I'd say two weeks, no. Okay. All right. Again, it sounds like you're not disputing that, given what actually transpired at the trial, your client's claims were objectively unreasonable. No, I think the findings as to why they were objectionably unreasonable, for instance, that there's no evidence of an infringement, you could say, yes, they're objectionably unreasonable because there was no testimony, but there was no testimony because the dates weren't permitted to be made. You could say, oh, it's objectionably unreasonable. They couldn't testify on those dates. So I guess that's kind of my question, which I put to the opposing counsel, which is if the evidence exists out there, but you fail to put it in front of the district court, does that make your claim objectively reasonable because it exists, just that you couldn't – didn't present it properly? I think from the client's standpoint, yes. From the client's standpoint, I have this evidence. I believe I have an objectionable basis for bringing it forward. This is what I understand what evidence is. This is what I understand is what you put before the court. You're looking now into the mind of the client. From the client's standpoint, he thinks I've got these dates. I've got – he didn't testify at that trial, but he believes he still has standing to bring the action, notwithstanding the assignment to the court of error. And Judge Sullivan found your client's testimony incredible, right? Right. Right. And he's the finder of fact, right? And we have to affirm findings of fact unless they're clearly erroneous, right? Okay. Do you have any – if you have one last thing just to wrap up? Sir, I just want to point out that with respect to the allegation that you were He testified. I was coming with copies of the dates to my deposition. I was going to the computer. And then the defendants, they never took his evidence. Okay. I think we have your argument. Thank you very much to both counsel. We will take that case under advisement. Thank you.